[S. F. No. 1630.   Department One.—November 23. 1900.]

JOHN O'BRIEN, Respondent, v. FRANK PERRY et ux.,
Defendants.   ANNIE PERRY, Appellant.

CONTRACT FOR LIFE TENANCY—PERSONAL SERVICES—SPECIFIC PERFORM-
ANCE—REMEDY AT LAW.—An oral agreement between a father and
daughter that he would give her and her family the rent of his home
free for life, and would leave her by will the residue of his
estate, subject to certain bequests, in consideration of her
promise to provide him a home therein and supply his personal
wants for life, is a contract on her part to render personal
services during the life of her father, and cannot be specifically
enforced by either party. For any breach of the contract while
unperformed on her part, the parties must be left to their
remedy at law.

ID.—BREACH OF CONTRACT—TENANCY AT WILL—NOTICE TO QUIT—UN-
LAWFUL DETAINER—INJUNCTION.—Upon breach of the contract by
the father, in refusing to remain to be provided for, and treat-
ing the occupation of his house by the daughter and her family
thereafter as a tenancy at will, and, after giving them notice
to quit, bringing an action of unlawful detainer against them,
the daughter, not being entitled to a specific performance of
the contract, cannot defend such action as a life tenant, and
is not entitled to an injunction to restrain interference of the
father with her occupation of the premises.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

William M. Cannon, and T. C. Coogan, for Appellant.

Sullivan & Sullivan, for Respondent.

THE COURT.—Unlawful detainer. Plaintiff had judgment, from which defendant Annie Perry appeals on the judgment-roll. Plaintiff's complaint proceeds upon the theory that defendants occupy the premises in question—a flat, No. 126½ Noe street, San Francisco—as tenants at will of plaintiff.

Defendants pleaded occupancy of the premises under an oral contract with plaintiff by which defendants were to live in the flat, there furnish him a home, care for his personal wants, in consideration of which plaintiff was to make a will in appellant's favor and permit her and her family to remain in said flat during plaintiff's life.

Plaintiff had made a conditional conveyance of certain of his real property to two of his daughters, other than defendant Annie, but owing to some disagreement in relation thereto the deeds were recalled and a settlement made of the controversy. The findings as to this and some other matters do not aid materially in deciding the case and need not be particularly referred to. As to the agreement under which appellant claims the court found as follows: "During the month of May, 1895, and while said settlement was in progress [referring to the settlement of the controversy with his other two daughters], said plaintiff proposed to defendant Annie Perry, who was then living with her husband and family of three children upon premises owned by her and her husband on Eureka street, in the city and county of San Francisco, that if she would give up her said residence and go with her said husband and family to live in said flat belonging to him at No. 126½ Noe street, and if she would there furnish him with a home for and during the remainder of his life with her and her family, and provide for his personal wants, he, the plaintiff, in consideration thereof, would give and grant to her the right to live with her said family in said flat, No. 126½ Noe street, during his, the plain-

tiff's lifetime, free and clear of any rent or other charge, and that he would thereupon make and publish a will, in and by which he would devise and bequeath to her all of his property, not deeded to his daughters Sarah and Lizzie, subject to the payment of a bequest to his daughter Mary Bergener of two thousand ($2,000) dollars, and a bequest to his son, Joseph Damien O'Brien, of one thousand ($1,000) dollars, and a bequest to his nephew, David O'Brien, of five hundred ($500) dollars, and subject also to the payment of expenses of administration, and the payment to his executors of one thousand ($1,000) dollars for the purpose of reinterring the remains of deceased members of his family, should such reinterment be necessary, and for the payment of masses for the repose of their souls. Said defendant, Annie Perry, then and there, by and with the consent of her husband, accepted each and all of said proposals on the part of plaintiff, and agreed to perform all of them."

The court found that upon leaving her home on Eureka street appellant sold certain of her household goods, "losing by said sale about sixty dollars upon the original cost of such articles, and that she paid out the expenses of removal from Eureka street to Noe street"; the court also found that about July 21, 1896 (something over a year after appellant moved to plaintiff's house), plaintiff left the premises 126½ Noe street without the knowledge or consent of defendants; he "had been sick, and had become dissatisfied with his condition and his treatment by defendants, and on the date mentioned went to live with his daughters Lizzie Tierney and Sarah O'Brien, where he has since resided," and has ever since claimed that defendant Annie had no interest in the Noe street property; the flat No. 126½ "had been furnished by plaintiff, and occupied by him as his house prior to the removal of defendants from Eureka street." During the time plaintiff and defendants resided together at 126½ Noe street "he from time to time contributed from his own means toward the support of defendant Annie Perry"; during their occupancy defendants paid no rent "or any of the charges accruing against said property"; during all said time defendant Annie "has been ready and willing, and still stands ready and willing, to furnish plaintiff a home, and to render him her personal services and attentions, as in the proposals of

plaintiff hereinabove mentioned and as in these findings recited and set forth."

Defendants do not ask specific performance of the contract, although it is claimed that the contract is sufficiently certain for specific performance, but, as is said in their brief, they ask "only preventive remedies until the time for specific relief is ripe." It is prayed that it be decreed that defendant Annie Perry owns an interest in said flat, determinable only at the death of plaintiff, with the right to reside there during plaintiff's life without paying rent, and that plaintiff be compelled to execute a conveyance of such interest; that the said will be declared irrevocable as against defendant Annie Perry, and that plaintiff be adjudged to have no power to alienate or encumber said property to said defendant's prejudice, and that plaintiff be restrained from interfering in any manner with said defendant's said rights.

Although defendants do not at this time, for obvious reasons, claim full relief under the alleged contract, it is quite clear that the relief now asked cannot be given them unless, from the facts shown, they would ultimately be entitled to what they claim are their full rights.

Respondent contends that no contract is proven, and certainly not such a contract as is capable of specific enforcement. "An obligation to render personal service cannot be specifically enforced." (Civ. Code, sec. 3390, subd. 1.)

There are some exceptions to this rule, but we do not think this case is one of them. In the very nature of the services undertaken by appellant, which are prospective and may be continued for years, it would be utterly impracticable for the court to compel performance on her part, and without this could be done there would be no mutuality of remedy which is essential to authorize the specific performance of a contract. If plaintiff could not compel appellant to live in his house and minister to his personal wants during his natural life, the rule is that she cannot compel performance on his part; the parties in such case will be left to their remedy at law.

The doctrine was quite fully discussed in the early case of *Cooper v. Pena*, 21 Cal. 404, and this case has been frequently cited, and the rule there laid down has been approved in many

cases. In Thurber v. Meves, 119 Cal. 35, it was said: "While an obligation to perform personal services is one of which specific enforcement may not be had (Civ. Code, sec. 3390), this rule has not the effect to defeat the right to have the specific benefit of an enforceable obligation entered into in consideration of personal services, where such services have been fully or substantially performed." (See, upon the point, Pomeroy's Specific Performance of Contracts, sec. 162 et seq; see, also, sec. 310 et seq.) But it cannot be said in the present case that the services were substantially, and they certainly were not fully, performed by appellant. Plaintiff may live many years; he may outlive appellant.

It was said in Duvall v. Myers, 2 Md. Ch. 401, that the right to specific performance depends upon whether the agreement itself is obligatory upon both parties, "so that upon the application of either against the other, the court would coerce a specific performance. . . . . His right to the aid of the court does not depend upon his subsequent offer to perform the contract on his part, but upon its original obligatory character." (See Grimmer v. Carlton, 93 Cal. 189; King v. Gildersleeve, 79 Cal 504.[1] See, also, the recent case, Stanton v. Singleton, 126 Cal. 657.)

Appellant was not materially injured by the exchange of homes, and her promise involved her in no new pecuniary liability. In fact, her situation was improved in some respects, for she had a home free of cost to her and could collect rent on the home she left. Apart from these considerations, which bear only upon the question of substantial performance by appellant, we do not think she could be compelled to perform her agreement, and therefore she cannot have the relief asked.

The matters alleged in the answer upon which it is claimed the court failed to make findings do not seem to affect the question, nor would they change the result even if found in appellant's favor. Respondent raises several important considerations as bearing upon the validity of the alleged contract. The view we have taken makes it unnecessary to pass upon them.

The judgment is affirmed.

[1] 27 Am. St. Rep. 171.