[Civ. No. 12780. First Dist., Div. One. Apr. 26, 1945.]

JOHN W. HORSMAN et al., as Executors, etc., Appellants,
v. MARCELLA MADEN, Respondent.

Peter tum Suden and Richard tum Suden for Appellants.

Williamson & Wallace for Respondent.

WARD, J.—This is an appeal from a judgment for defendant in an action to quiet title to certain real and personal property. The plaintiffs are the executors of the estate of Emile Maden, deceased, and the defendant is his widow. The executors are seeking to recover for the estate property which defendant claims as her separate property. Almost all of the property in question was acquired with the community funds of defendant and her husband, held by them in joint tenancy, and then during 1934 and 1935 transferred to, defendant. The basic issue in this case is whether Maden made a gift to his wife of his share in the property or whether he did not intend to affect the status of the property but made the transfers "as a matter of convenience and for the protection" of the parties' respective interests.

The present appeal is the second one taken in this case. Plaintiffs previously appealed from a judgment after nonsuit. The trial court had refused to allow plaintiffs to introduce evidence of Maden's declarations both before and after the transfers that he did not intend thereby to make a gift to defendant. It was held that the declarations were admissible.

(*Horsman* v. *Maden,* 48 Cal.App.2d 635 [120 P.2d 92].) The case was retried in accordance with this decision and the present appeal taken from judgment rendered therein.

Emile and Marcella Maden were married on December 25, 1914. From the time of their marriage until 1933 the earnings of both spouses were deposited in joint bank accounts. From time to time money was withdrawn from these accounts for investments in various stocks, bonds, and in real property. Certificates representing the shares of stock purchased were, with a few exceptions, taken in the names of the parties as joint tenants. One of the exceptions was a one-eighth interest in the Cyclops Iron Works of which Maden was vice-president and manager. The stock certificate representing this interest was held in his name alone. The spouses also held several bonds separately. Their home, purchased in the summer of 1933, was held in joint tenancy. A cash payment of $3,000 had been made at the time of purchase and a mortgage of $3,000 given to cover the balance of the purchase price.

Later in 1933 Maden told his wife that he had formed an attachment for another woman and asked her to secure a divorce which she refused to do. After talking with Maden's uncle and later the uncle's attorney, defendant withdrew all funds in the joint bank accounts amounting to approximately $8,500 and the securities in the joint safe deposit box. She left a note in the safe deposit box which read as follows: "Dearest Emile: I am taking charge of our possessions as I want to save you from yourself. Remember I love you dearly and know that I will always be your best friend. Marcella."

Thereafter, the parties attempted a reconciliation and took a three months' trip to the Orient. Defendant turned over the money she had withdrawn from the bank accounts to finance the trip. She retained possession of the securities. The reconciliation was a failure. Disputes arose over the matter of defendant's support. To work out his difficulties with his wife Maden took the steps over which there is much conflicting evidence. According to defendant's testimony she met her husband in October, 1934, in the safe deposit vault where she had her individual box. Her husband told her at that time that he had decided to give her the securities and $100 a month from his salary. He also agreed to make a deed to her of the family home. Defendant states that her husband then en-

dorsed the stock certificates for transfer and delivered them to her with the statement that they were to be her personal and separate property. Among the securities were two $1,000 bonds of the Texas Corporation. Mr. Maden took one of the bonds with him and gave the other to defendant. She testified that there was no agreement or understanding that her husband should retain any interest in the securities transferred.

Defendant's testimony is corroborated by that of her father, who stated that he called at defendant's house shortly before Christmas and there met and talked with Maden who was packing his trunk preparatory to leaving. At that time Maden made the following remarks: ''Dad, I suppose you know about Marcella and I.'' The father said he knew nothing and Maden replied: ''Well, we just cannot agree, and I am leaving but, Dad, don't worry, I gave Marcella everything.''

After their separation Maden transferred additional property to defendant. In the spring of 1935 while she was in the hospital recuperating from an operation, he gave her the bond he had taken with him from the safe deposit box. Later in the year he delivered to her a deed of gift to their home in San Francisco and in October, 1937, he signed a document confirming the transfer to her of a Crown Zellerbach voting trust certificate which had theretofore stood in his own name. Maden died in 1939.

In contradiction of defendant's proof that the transfers of the properties were gifts to her, is testimony that Maden stated that he never intended to part with his interest in the properties; that he only agreed to give his wife the income therefrom. In his will he declared that all of his estate was community property and that there was no agreement to make it defendant's separate property, but that it had been placed in her name as a matter of convenience. He then bequeathed his half of the community property to the other woman.

■ Plaintiffs attack the sufficiency of the evidence, as a matter of law, to sustain the findings in defendant's favor. They base their contention on proof of Maden's intent to retain his interest in the property, on defendant's interest in the outcome of the suit, and on inconsistencies in some of her testimony. Plaintiffs' argument on this point while persuasive is the type of argument which should have been, and probably was, addressed to the trial court. On appeal we cannot interfere with the result reached by the trier of fact

when there exists a substantial conflict in the evidence. Plaintiffs' effort to escape this limitation on our powers by citation of *Herbert* v. *Lankershim*, 9 Cal.2d 409 [71 P.2d 220] is of no avail. That case is cited as authority for the proposition that in a proper case the appellate court may review the evidence. We believe that the evidence in the present case is sufficient to support the findings of the trial judge. The trial court had an opportunity of hearing the testimony and passing on the credibility of the witnesses, including defendant. When as a reviewing court we read the transcript we cannot say from anything we find therein that the conclusions reached by the trial court are incorrect.

There is no merit in plaintiffs' contention that the previous appeal establishes as the law of this case that the transfers were not made as a gift to defendant. It is true that the decision contains the following statement (p. 639): ''Despite the rulings refusing admission of certain evidence, some of the evidence given by defendant herself, together with evidence given by other witnesses was sufficient to show that there was no intention on the part of the deceased to make a gift to defendant or change the status of the property; that the transfers were requested by defendant for the protection of both parties; and that the deceased made the transfers after expressing his trust in the defendant and his faith that defendant would respect his interest in the property.'' However, this statement cannot be used to attack the sufficiency of the evidence. In the first place the court was discussing a nonsuit and was presenting the strongest statement possible of plaintiffs' case. In the second place the court said (p. 642): ''It is probably unnecessary but we deem it appropriate to state that this court should not be understood as indicating any view with respect to the ultimate determination of the issues of fact which may be presented in this controversy.''

Plaintiffs complain with justification that the findings are not carefully prepared. However, they are sufficient to support the judgment. Objection is raised to the court's failure to find on the issue of Maden's intent in making the transfers. It is true that there is no specific finding on this point but the court found that Maden gave the securities to defendant and made a deed of gift of the real property. Implicit in the finding of a gift is a finding of Maden's intent

in transferring the property to his wife. The actual transfer of the property plus an intention to give are the constituent parts of a gift. There is ample, authority for holding that findings which fully support the judgment will not be set aside on appeal for failure to make a finding on an issue if a finding thereon results by necessary implication from those made. (24 Cal.Jur. § 207, p. 974; 10 Cal.Jur.Supp. § 207, p. 753.)

The finding that Maden gave his wife his interest in their jointly owned property makes unnecessary any extended consideration of plaintiffs' argument that they were unfairly prevented by the tactics of defendant's counsel from presenting proof that the securities and real property while held in joint tenancy remained community property. Whatever the manner of holding the property, Maden could give it to his wife as her separate property, which is what the evidence shows that he did. In view of this conclusion a discussion of *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905], and related cases is not required.

For the same reason the contention that the court failed to find on the ownership or community character of the real property is without merit. The finding that Maden delivered a deed of gift of the real property to defendant makes unnecessary a finding as to the ownership of the property prior to the delivery of the deed, and it is obvious from reading all of the findings that had the court made a specific finding on the ownership of the real property after the transfer it would have favored defendant.

Plaintiffs alleged in their complaint that subsequent to the marriage of defendant and Emile Maden they acquired certain bonds, namely, four $1,000 U. S. Government bonds of the issue of 1935; one $1,000 Southern California Edison bond; two $1,000 Texas Corporation bonds and one $1,000 American Mercantile Realty Company bond. They alleged that the bonds were at all times since their acquisition community property and were of the reasonable value of $8,000. Defendant admitted in her answer that the bonds were acquired after her marriage with Maden and with community funds. She alleged and at the trial offered evidence to prove that the Texas bonds were given her by her husband as her sole and separate property. The first one he gave to her on October 16, 1934, at the same time he transferred the securities

to her. The other Texas bond was given in April, 1935, while she was in the hospital recovering from a serious operation. She alleged that prior to the year 1933 Maden gave her as her sole and separate property the $1,000 Southern California Edison bond and the $1,000 American Mercantile Realty Company bond. The government bonds she alleged were purchased out of her separate funds. All of the bonds had been sold by defendant as her separate property.

Plaintiffs offered no testimony to overcome the allegations and evidence that the bonds were given defendant as her separate property, yet they complain that the trial court failed to find on the ownership of the bonds. It is obvious from the pleadings, the evidence, and the other findings that if a finding is necessary we must and do find that the bonds were defendant's sole and separate property. (Code Civ. Proc., § 956a.)

The decision reached by us on the merits of this case makes unnecessary any consideration of plaintiffs' contention that the trial court made no finding of fact to support his conclusion of law that the action was barred by the statute of limitations.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 21, 1945.